BRETT TOLMAN, UNITED STATES ATTORNEY (#8821)
CARLOS A. ESQUEDA, Assistant United States Attorney (#5386)
Attorneys for the United States of America
185 South State Street, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

**SEALED**

**FILED WITH**
OCT 27 2006
UNITED STATES
MAGISTRATE JUDGE
SAMUEL ALBA

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. A-06-338M |
| Plaintiff, | : | **SEALED COMPLAINT** |
| vs. | : | Vio.: 26 U.S.C. § 5861 (d) POSSESSION OF AN UNREGISTERED DESTRUCTIVE DEVICE |
| THOMAS JAMES ZAJAC | : | |
| | : | |
| Defendant. | : | Magistrate Judge Samuel Alba |

Before Samuel Alba, United States Magistrate Judge for the District of Utah, appeared the undersigned, who on oath deposes and says:

### COUNT 1

On or about September 15, 2006, in the Central Division of the District of Utah,

THOMAS JAMES ZAJAC,

defendant herein, did knowingly possess a destructive device not registered in the National Firearms Act Registration and Transfer Record; all in violation of 26 U.S.C. § 5861 (d).

1

Complainant, Michael Minichino, being first duly sworn, states that this complaint is based on the following:

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Salt Lake City Field Office of the Phoenix Field Division. I have been employed as a SA since December 2000. I have received specialized training from the Federal Law Enforcement Training Center in Glynco, Georgia. During the course of my employment with ATF, I have conducted and assisted in dozens of criminal investigations of Federal and State of Utah violations. I have personally utilized electronic surveillance equipment and participated in the execution of Federal and state search warrants for firearms, explosives, arson, and narcotics violations. I have conducted interviews of suspects, witnesses, and informants relating to various types of crimes. I received advanced training in arson and explosives investigations, including post-blast examination.

2. This affidavit is made in support of a criminal complaint alleging a violation of 26 U.S.C. § 5861 (d), Possession of an Unregistered Destructive Device, on or about September 15, 2006.

3. Information developed to date as a result of my investigation and the investigation of others including ATF Explosives Enforcement Officer (EEO) Danny Waltenbaugh, Detective (Det.) Dave Layton from the Salt Lake City Police Department, SA Matt Miller from the Federal Bureau of Investigation, and laboratory personnel from the Salt Lake City Police Department and ATF reveals the following:

4. On 09/15/2006 at approximately 1430 hours, an apparent improvised explosive device (IED) detonated on the third floor of the Salt Lake City Main Library, 210 East, 400 South, Salt

2

Lake City, Utah. The Salt Lake City Police Department (SLC PD) evacuated the library and secured the blast area. The render safe was accomplished by the SLC PD Bomb Squad and an FBI Bomb Tech. No injuries or deaths occurred. Property damage was sustained to a large double ~~pain~~ pane window with an estimated damage of several thousand dollars.

5. On 09/18/2006, EEO Danny Waltenbaugh examined the evidence collected on 09/15/2006. EEO Waltenbaugh is a court recognized expert in the identification of IEDs and explosives. Your affiant and other investigators were present during this examination.

6. EEO Waltenbaugh provided details as to the possible construction of the IED. EEO Waltenbaugh drew a schematic of a possible firing train that included a Sunbeam brand 60 minute kitchen timer on an electrical circuit with soldered connections to a 9-volt battery, connected to a possible rocket igniter, connected to a pyrotechnic fuse, leading into an end primer hole measuring approximately 3/32" leading to an explosive material contained inside galvanized pipe with end caps attached. Due to the involvement of the kitchen timer in the firing train, the IED could have been situated in the library as long as 60 minutes.

7. Additional suspect signatures include the presence of a partial road flare, possibly for an incendiary effect, and several of the device components were adhered together with an apparent white caulk substance. The IED components were apparently mounted on a piece of cardboard. The cardboard has some handwritten information that is crossed out. The above listed items were all apparently situated inside a white paper Arby's bag mounted on the cardboard.

8. The actual IED consisted of an approximate 1 ¾" length of galvanized pipe and ½" diameter galvanized end caps. EEO Waltenbaugh found the apparent remnants of packaging for a rocket igniter. The igniter has a green price tag ($4.37) from Hobby Lobby, a retail hobby

3

chain store. EEO Waltenbaugh found a flattened ball of suspected explosive powder, with a shape indicative of smokeless powder. In EEO Waltenbaugh's expert opinion, these evidentiary items are classified as a "destructive device" as that term is defined in federal statute.

9. An Internet search and subsequent investigation revealed that Hobby Lobby has locations throughout the United States, but none in Utah. Most of the Hobby Lobby locations are east of Utah. Therefore, investigators were led to believe that the suspect might have out of state associations east of Utah.

10. ATF, FBI, and SLC PD conducted dozens of witness interviews. On 09/15/2006, ATF SA Jason Townsend and other investigators interviewed Tony Kent Snively. Snively was situated on the third floor in proximity of the IED when it detonated. Snively heard a hissing sound prior to the detonation of the IED, but did not observe an individual who placed the IED.

11. On 09/26/2006, your affiant and Det. Layton interviewed Conrad Olsen, another individual who had been seated in close proximity to the IED prior to its detonation. Approximately 5 to 10 minutes before Olsen walked over to a computer station, Olsen observed an unidentified male (UM) sit down in the chair next to Tony Snively. From Olsen's description, this chair was situated right next to the column where the IED eventually detonated. Olsen described the UM as a heavy set white male wearing a green polo shirt and tan khaki pants. Olsen further described the UM as approximately 5'10" and having a "belly," approximately 30 to 50 years old, and with dark hair.

12. Olsen recalled that the UM avoided eye contact with him and that he kept looking down toward the floor. Olsen did not have the line of sight to see what items, if any, were situated in the UM's hands.

13. On 09/26/2006, your affiant reviewed surveillance video that shows numerous camera angles of recorded footage from 09/15/2006 including the west and east entrance/exits of the library and hallways to the 2nd floor and 3rd floor bathrooms. Your affiant observed, during the relevant time period, a heavyset white male (WM), wearing a green polo shirt, enter the west side of the library. The WM appears to be carrying a white paper bag, not a white plastic grocery-style bag, which tend to have long conspicuous handles.

14. The WM is seen walking into the 2nd floor bathroom carrying the white bag. Seconds later, the WM walks out of the bathroom as if he had not found the location to be suitable for some purpose. Two minutes after being situated on the second floor, the WM is seen walking into the 3rd floor bathroom carrying the white bag. Seconds later, the WM walks out of the bathroom as is he had not found the location to be suitable for some purpose. The UM is seen exiting the library on the west side carrying a white bag.

15. Your affiant was unable to determine from the video if the UM had a double white bag, as some fast food restaurants double bag to go orders. As stated earlier, the IED was contained inside a white paper Arby's bag. Your affiant has viewed hours of video surveillance and not observed any other individuals that appear to be carrying a white paper bag.

16. On 10/10/2006, your affiant sent the remnant of the rocket igniter with the Hobby Lobby price tag to the ATF National Laboratory. This item had been processed for latent fingerprints by the Salt Lake City Crime Lab and was found to have a latent fingerprint of IAFIS quality. The ATF Laboratory received a hit through IAFIS for a possible match and eventually received a known fingerprint card to compare to the unknown latent.

17. On 10/27/2006, your affiant received correspondence from the ATF National Laboratory. Fingerprint Specialist Debra Galaviz-Flores told your affiant that the unknown

5

latent on the rocket igniter wrapper matched through manual comparison to THOMAS JAMES ZAJAC. ZAJAC has an arrest in Ohio and an arrest in Illinois, thus his fingerprints were situated in IAFIS. A query of law enforcement databases revealed that ZAJAC used to live in Salt Lake City and Provo, Utah. However, ZAJAC has never been arrested in Utah. Hobby Lobby has confirmed that THOMAS JAMES ZAJAC has never been employed through their company.

18. On 10/27/2006, your affiant viewed an Illinois driver's license photo and a Hinsdale Police Department (Illinois) booking photo for ZAJAC. ZAJAC appears to match the physical description provided by Conrad Olsen and the image of the WM who was carrying a white bag on 09/15/2006 inside the library.

19. On 10/27/2006, your affiant caused a query of the ATF National Firearms Registration and Transfer Record to happen. The query revealed that no National Firearms Act weapons are registered to THOMAS JAMES ZAJAC. Thus, ZAJAC appears to be in violation of 26 U.S.C. 5861(d), Possession of an Unregistered Destructive Device.

Based on the aforementioned facts, your affiant believes sufficient probable cause exists to charge THOMAS JAMES ZAJAC with a violation of 26 U.S.C. § 5861 (d), Possession of an Unregistered Destructive Device. Your affiant further requests a warrant for arrest be issued based upon the facts set forth herein.

DATED this 27th day of October 2006.

Michael Minichino, Special Agent,
Bureau of Alcohol, Tobacco,
Firearms & Explosives

Subscribed and sworn to before me this 27 day of October 2006.

*[signature]*
SAMUEL ALBA
UNITED STATES MAGISTRATE JUDGE

APPROVED:

BRETT TOLMAN
UNITED STATES ATTORNEY

*[signature]*
CARLOS ESQUEDA
Assistant United States Attorney

7